IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CRAIG RICHERSON,                )    Civil No. 05-1931-JE
                               )
              Plaintiff,        )    FINDINGS AND
                               )    RECOMMENDATION
         v.                    )
                               )
JOANNE BARNHART,               )
Commissioner, SSA,             )
                               )
              Defendant.        )
_____)

        Phil Studenberg
        200 Pine Street
        Klamath Falls, OR 97601
             Attorney for Plaintiff

        Karin J. Immergut
        U.S. Attorney
        Neil Evans
        Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204-2902

        Carol A. Hoch
        Special Asst. U.S. Attorney
        Office of General Counsel
        Social Security Administration
        701 5th Avenue, Suite 2900 M/S 901
        Seattle, WA 98104-7075
             Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Craig Richerson brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security denying his application for Supplemental Security Income (SSI) benefits.  In his supporting memorandum, plaintiff seeks an order remanding this action to the Social Security Administration for "further workup" by the Agency.  The Commissioner's decision should be affirmed.

## **Procedural Background**

Plaintiff filed an application for SSI benefits on October 16, 2002, asserting that he was disabled as of July 1, 2002, because of degenerative spine disease, arthritis, and skin cancer.  The application was denied initially on February 28, 2003, and was denied on reconsideration on May 29, 2003.

On August 17, 2004, pursuant to plaintiff's timely request, a hearing was held before Administrative Law Judge (ALJ) James Caufield.  Plaintiff, who was not represented, testified at the hearing.  Shirley Richerson, plaintiff's mother; and Dennis Elliot, a Vocational Expert (VE); also testified.

In a decision dated April 8, 2005, the ALJ found that plaintiff was not disabled within the meaning of the Social

FINDINGS AND RECOMMENDATION - 2

Security Act (the Act) because he could perform his past relevant work as a Cook, Night Auditor, Gas/Oil Servicer, Hand Packager, and Cleaner.  That decision became the final decision of the Commissioner on October 28, 2005, when the Appeals Council denied plaintiff's request for review.  In the present action, plaintiff appeals from that decision.

## **Factual Background**

Plaintiff was 43 years old at the time of the ALJ's decision.  He has a ninth grade education, and has past relevant work experience as a cook, hand packager, night auditor, gas/oil servicer, cleaner, and tire technician.  As noted above, plaintiff initially alleged that he was disabled because of spine disease, arthritis, and skin cancer.  As the Commissioner's memorandum accurately notes, during the hearing and in his statements to doctors, plaintiff also asserted that his medical problems included seizures, congenital heart disease, Attention Deficit and Hyperactivity Disorder (ADHD), hearing loss, and bipolar disease.

Plaintiff has a long history of drug and alcohol abuse, and a criminal history that includes misdemeanor convictions, probations violations, and felony convictions resulting in prison incarcerations.  His most recent felony conviction was for possession of methamphetamine.

### Medical Record

Plaintiff, who is now represented by counsel, does not dispute any particular portion of the ALJ's analysis of the medical record.  Accordingly, I will not set out the medical record in detail here, but instead will only briefly summarize the ALJ's recitation of that record.

Plaintiff reported back pain to Norma Nehren, M.D., his treating physician, on May 15, 2001.  An examination revealed "some localized tenderness at the area of L4-5, and also some tenderness along the paraspinous muscles in that area."  Plaintiff's reflexes were intact bilaterally.  He could "toe and heel" walk, and straight leg raising caused only localized pain.  Dr. Nehren diagnosed low back pain without radiculopathy, and recommended conservative treatment.

Following plaintiff's further complaints of pain, Dr. Nehren reviewed x-rays.  The findings of mild degenerative facet disease of the lower lumbar spine without fracture or subluxation were unremarkable, and plaintiff was referred to physical therapy for strengthening exercises.

In a visit to Michael Scully, M.D., on June 30, 2001, plaintiff reported continued back pain.  He also reported "some grinding," and transient numbness and tingling and shakiness in his legs.  Plaintiff told Dr. Scully that he was "interested in getting on disability for a two year period" so that he could go to school.  Dr. Scully noted that plaintiff

had "some mild arthritis," but opined that he "more prominently" had "some muscle spasm" that was expected to heal over time.  He added that plaintiff did not "seem to be giving his full effort" during strength testing.

Plaintiff began physical therapy in July 2001, and told Dr. Scully on July 24, 2001, that his back pain was lessening, and that his muscles had "become a lot less tight."  On October 22, 2002, plaintiff told Dr. Scully that he was walking a mile a day.

During a visit to Dr. Nehren on December 2, 2002, plaintiff complained of hip pain he experienced after slipping and falling off a curb.  Dr. Nehren diagnosed sacroiliac joint strain, and continued plaintiff on his then-current medications.  During a follow-up appointment two weeks later, plaintiff reported that a prescribed steroid taper had alleviated his joint pain, but that he experienced a sharp increase in pain in his left lumbar area.  Dr. Nehren noted that plaintiff's back was "somewhat stiff," and that it appeared that there was "a little bit of swelling over the L1-L4 of the soft tissue and "a large roping muscle spasm over the left paraspinal muscles."  Dr. Nehren diagnosed lumbar strain with strain of the left paraspinal muscles, and muscle spasm.

After plaintiff complained of "great difficulty walking" during a visit on March 5, 2003, Dr. Nehren requested that

magnetic imaging (MRI) sequences be taken of plaintiff's
spine.  An MRI performed on March 19, 2003, revealed
"no evidence of significant central or neural foraminal
narrowing," and "[n]o focal disk bulge or herniations [were]
identified."  Dr. Nehren told plaintiff that the MRI was
"completely normal" and recommended that he perform
conditioning exercises.

     During a visit to Dr. Nehren on February 16, 2004,
plaintiff reported that he experienced low back pain over the
lumbar sacral area which had worsened over the previous 10
months.  A straight leg raising test was negative.  Dr. Nehren
diagnosed mild arthritis in plaintiff's back and chronic low
back pain associated with degenerative facet disease.  She
told plaintiff that the Vicodin she prescribed was "only for
breakthrough pain," and that the 30 pills she prescribed
should last a year.  Exercise was discussed, and subsequent
chart notes indicate that plaintiff joined the YMCA and
started an aqua exercise program.

     During an appointment on June 28, 2004, plaintiff told
Dr. Nehren that he was "applying for disability and [had] been
talking to his case worker" who had said that if Dr. Nehren
would "say he was disabled and could not work because of his
diagnosis," it would be "a lot easier" and plaintiff would not
be required "to go through BOC [Bureau of Corrections]
rehabilitation."  Dr. Nehren told plaintiff that, though he

had degenerative facet disease and some arthritis, his MRI did not "support a diagnosis that would imply disability."  Her chart notes added that she recognized that plaintiff "has to move around a lot and cannot sit in one position for very long," but that, with the use of appropriate medications, his bipolar disorder "should be controlled enough to allow him to work."  Dr. Nehren's diagnoses included bipolar disorder, Hepatis C and B, and degenerative facet disease with arthritis and chronic low back pain.

Michael Villanueva, Psy.D., conducted a consultative psychological examination of plaintiff in April, 1999. Plaintiff reported depressive symptoms, and told Dr. Villanueva that he had been recently diagnosed with epilepsy and was taking Dilantin to control seizures.  He also told Dr. Villanueva that his habits included alcohol intake, but that he had stopped drinking two and a half to three months earlier.

Dr. Villanueva administered several psychological tests, including the "Minnesota Multiphasic Personality Inventory" (MMPI), which was found to be invalid, based upon scores suggesting a random, exaggerated, or misscored profile. Dr. Villanueva concluded that the test results validly demonstrated plaintiff's "concrete reasoning, ability to understand social cues, high reading recognition, attention difficulties, and low verbal IQ and impaired visual memory."

Plaintiff's verbal memory was characterized as "surprisingly good."  Dr. Villanueva diagnosed Possible Dysthymia, Possible History of Occasional Alcohol Overuse, Borderline Intellect and History of Academic Difficulties, and Seizure Disorders. Plaintiff's Global Assessment of Functioning (GAF) was rated at 60, indicating moderate symptoms or moderate difficulties in social, occupational, or school functioning.

In 2004, plaintiff diagnosed himself with ADHD based upon an on-line questionnaire provided by a pharmaceutical manufacturer.  He was referred for evaluation.  Dr. Melnick, who evaluated plaintiff in June, 2004, reported that she believed he probably had bipolar disorder, although there was a possibility that he had suffered brain damage "secondary to history of drug use or combination of both."

At the time of the ALJ's decision, plaintiff's medications included non-opioid anti-inflammatories, anti-hypertensive medications, and an opioid pain reliever. Plaintiff had been given no prescriptions for the treatment of ADHD or bipolar disorder.

## **Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled.  If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step Three.  20 C.F.R. § 404.1520(c).

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the claimant is able to perform work he or she has done in the

past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

FINDINGS AND RECOMMENDATION - 10

### ALJ's Decision

The ALJ found that plaintiff's discogenic and degenerative disorders constituted a severe impairment, but that this impairment did not meet or medically equal any impairment in the relevant regulations.

The ALJ found that plaintiff had the residual functional capacity to perform work at the medium exertional level, which included the ability to occasionally lift and/or carry 50 pounds; frequently lift and/or carry 25 pounds; stand, walk or sit for 6 hours in an 8-hour workday; and perform unlimited pushing and pulling.  He further found that plaintiff's past relevant work as a Cook, Night Auditor, Gas/Oil Servicer, Hand Packager, and Cleaner was possible with that residual capacity, and that his "medically determinable disorders of the back" did not preclude the performance of this past relevant work.

Based upon these findings, the ALJ concluded that plaintiff was not disabled within the meaning of the Act.

In reaching this conclusion, the ALJ found that plaintiff and plaintiff's mother had not been fully credible in describing plaintiff's condition and limitations.  In support of his conclusion that plaintiff was not wholly credible, the ALJ cited inconsistencies in plaintiff's "self-reported limitations, his exaggerated pain behavior, and the lack of a

physiological basis for his complaints."  He noted, for example, that, though plaintiff testified that he could walk only a few blocks during the past three years, he had told Dr. Scully in October, 2002, that he was walking a mile per day, and asserted on a pain questionnaire in September, 2001, that physical therapy had produced no results, though he had told Dr. Scully two months earlier that his back pain and muscle tension had been considerably lessened by that therapy. The ALJ also noted that plaintiff had asked Dr. Nehren to exaggerate her clinical findings so that he could obtain disability benefits, and cited numerous examples of inconsistencies in plaintiff's reporting of his criminal history and substance abuse history to medical providers and examiners.  In addition, the ALJ cited several physical capacity evaluations that indicated that plaintiff could do more than plaintiff asserted in his own subjective assessments.

In evaluating the credibility of plaintiff's mother, the ALJ noted that, though she testified that plaintiff had last had problems with drugs and alcohol 6 or 7 years before the hearing, plaintiff "served time in prison in 2000 for possession of methamphetamine."  He also noted that her testimony that plaintiff had had a seizure a few months earlier was inconsistent with plaintiff's recovery of his

driver's license and plaintiff's report in 2001 that he no longer experienced seizures.

## Standard of Review

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The initial burden of proof rests upon the claimant to establish his or her disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771,

772 (9th Cir. 1986).  The Commissioner's decision must be
upheld, however, even if "the evidence is susceptible to more
than one rational interpretation."  <u>Andrews</u>, 53 F.3d at
1039-40.

### **Discussion**

As noted above, plaintiff was not represented at the time
of the hearing before the ALJ.  Now represented, plaintiff
contends that the ALJ "failed to fulfill his duty to develop
the record."  Plaintiff asserts that the ALJ did not comply
with the regulatory requirement that the Social Security
Administration "develop the claimant's complete medical
history for at least 12 months."  <u>See</u> 20 C.F.R. §§ 404.512(d),
416.912(d).  He also asserts that the ALJ "failed to follow
SSR 96-7p and 20 C.F.R. 1529 in evaluating Mr. Richerson's
credibility and that of his mother."  He adds that "[a] mere
recitation of the testimony and the disregarding of it is not
sufficient."

In addition to these assertions, which are set out in the
portion of his memorandum captioned "Legal Argument,"
plaintiff includes what may be construed as another legal
argument in the portion of his memorandum captioned
"Procedural History."  There, plaintiff asserts that
Dr. Nehrens, plaintiff's treating physician, signed an "RFC
assessment" that "severely limited" plaintiff's "ability to
function," indicated that this limitation was "expected to

FINDINGS AND RECOMMENDATION - 14

last a lifetime," and rated plaintiff's prognosis as "poor."
Plaintiff asserts that Dr. Nehrens "later altered her
assessment when questioned by the Administrative Law Judge."

I. <u>Development of the Record</u>

    Plaintiff is correct in asserting that an ALJ has an
independent duty to fully and fairly develop the record, and
that an ALJ must be especially diligent "in exploring for all
the relevant facts" when a claimant is not represented. <u>E.g.</u>,
<u>Tonapetyan v. Halter</u>, 242, F.3d 1144, 1150 (9th Cir. 2001).
However, a careful review of the ALJ's decision and the
Administrative Record does not support plaintiff's contention
that the ALJ did not adequately develop the record in his
examination of plaintiff's claim.

    An ALJ's duty to further develop a claimant's record "is
triggered only when there is ambiguous evidence or when the
record is inadequate to allow for proper evaluation of the
evidence." <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir.
2001).  As the Commissioner correctly notes, plaintiff does
not specify the aspects of the record which he asserts were
not adequately developed.  However, review of the
administrative record supports only the conclusion that the
record before the ALJ was not ambiguous, and that the record
was adequately developed to allow for proper evaluation of the
evidence.  In addition, the ALJ's conclusion that plaintiff

was not disabled within the meaning of the Act is supported by
substantial evidence in the administrative record.

ALJs are required to develop a claimant's complete
medical history for at least the 12 month period preceding the
filing of an application for benefits.  See 20 C.F.R.
§ 416.912(d).  Here, because plaintiff filed the application
at issue here on October 16, 2002, the ALJ was required to
develop the medical record from at least as early as
October 16, 2001.  Plaintiff's application listed Dr. Norma
Nehren and Dr. Richard Otoski as physicians who may have
medical records or other information about plaintiff's
"illnesses, injuries, or conditions."  Dr. Nehren provided
records of plaintiff's treatment from May 15, 2001, through
June 28, 2004, and Dr. Otoski provided records of his care
from October 30, 2002, through November 11, 2002, which was
the entire time he had provided care for plaintiff.  In
addition to these records, the ALJ included in the record
plaintiff's neuropsychological evaluation from 1999, a
detailed needs assessment performed in March, 2001, DDS
development summary worksheets, and residual functional
capacity reports.

The medical record compiled here provided an adequate
basis for evaluating plaintiff's conditions, and the evidence
in the record was not ambiguous.  Plaintiff's back pain was
noted repeatedly in the record, and his back problems were

thoroughly examined and diagnosed.  His skin cancer treatments
were tracked in the records, as were his complaints of
seizures, congenital heart disease, ADHD, and bipolar disease.
The record clearly indicates that plaintiff's back pain was
consistently diagnosed as low lumbar pain caused by muscle
spasm, arthritis, and degenerative facet disease, and
plaintiff was treated conservatively with prescription
medications and exercise regimens.  The other conditions of
which plaintiff complained were thoroughly addressed in the
medical record, and substantial evidence in that record
supports the ALJ's conclusion that plaintiff was not disabled
within the meaning of the Act.


II. Credibility Determinations

A. Plaintiff

    The ALJ is responsible for determining credibility,
resolving conflicts in the medical testimony, and resolving
ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.
1995).  If a claimant produces medical evidence of an
underlying impairment, the ALJ may not discredit the
claimant's testimony concerning the severity of symptoms
merely because it is not supported by objective medical
evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir.
1998), citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir.)
1991 (en banc).  Unless there is affirmative evidence that the

claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's testimony. Id., quoting Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms."

Here, the ALJ concluded that plaintiff was not fully credible based upon "the numerous inconsistencies in his self-reported limitations, his exaggerated pain behavior, and the lack of a physiological basis for his complaints." He also cited plaintiff's "inconsistent reporting of his criminal and substance abuse history to medical providers and examiners."

The evidence that the ALJ cited fully supported the ALJ's credibility determination. Plaintiff had asserted that his ability to bend, sit, stoop, walk, lift, and stand for long

periods was significantly limited, that he had been able to
walk only a few blocks at a time during the previous three
years, and that his back problems precluded nearly all
activities.  However, plaintiff's normal MRI results and other
medical evidence did not support such limitations, and in
October, 2002, plaintiff reported that he was walking a mile
daily.  Though plaintiff asserted that physical therapy was
ineffective on a pain questionnaire completed in September,
2001, he had told a doctor two months earlier that this
therapy had considerably diminished his back pain.  In
addition, a doctor noted that plaintiff did not appear to give
his full effort during a physical test, and plaintiff's
treating physician noted that plaintiff had asked her to
exaggerate her clinical findings to assist him in obtaining
disability benefits.  Though plaintiff testified to severe
physical limitations, he also testified that he attended aqua
exercise classes and exercised on a treadmill two to three
time per week, and that he was able to perform light household
chores and gardening.

     In addition to these inconsistencies, the ALJ's
conclusion that plaintiff had inconsistently reported his
criminal and substance abuse history to medical providers and
examiners was fully supported by the record.  Plaintiff
acknowledged at the hearing that his criminal record included
felony convictions for possession of methamphetamine, second

degree arson, and delivery of a controlled substance.
However, during a psychological evaluation in 1999, he denied
serving a prison sentence, and during a vocational
rehabilitation assessment in 2001, he denied having any felony
convictions.  His reporting of substance abuse issues was also
inconsistent.

The ALJ provided clear and convincing reasons for
concluding that plaintiff was not wholly credible, and his
examination of this issue satisfied the relevant requirements.


B. Plaintiff's Mother

Lay testimony concerning a claimant's symptoms or the
effects of a claimant's impairments is competent evidence
which must be considered.  20 C.F.R. § 404.1513(e)(2)
(Commissioner will consider observations by non-medical
sources concerning effect of impairments on claimant's ability
to work).  An ALJ who disregards such testimony "must give
reasons that are germane" for doing so.  Dodrill, 12 F.3d at
919.

The ALJ here concluded that the testimony of plaintiff's
mother, like that of plaintiff, was not entirely credible
because it was inconsistent with the record.  The ALJ noted
that, though plaintiff's mother denied knowledge of
plaintiff's "more recent drug use," and testified that he had
last had problems with drugs and alcohol 6 or 7 years before

the hearing, plaintiff had served time in prison in 2000 for possession of methamphetamine.  He also noted that, though the witness stated that plaintiff had had a seizure 3 to 4 months before the hearing, plaintiff was in the process of recovering his driver's license "just before the hearing . . . ."   In addition, he noted that plaintiff had reported to a counselor in June 2001 that he no longer experienced seizures, and that the results of a subsequent EEG test were apparently normal.

The ALJ's reasons for concluding that the testimony of plaintiff's mother was not wholly credible were germane, and were supported by evidence in the record.


III. Dr. Nehrens' "Assessment Alteration"

As noted above, in the "Procedural History" portion of his memorandum, plaintiff asserts that Dr. Nehrens initially submitted an RFC assessment indicating that plaintiff was severely limited and that his prognosis was "poor," but later "altered her assessment when questioned by the [ALJ]."

There is no evidence in the record supporting the conclusion that Dr. Nehrens was ever "questioned" by the ALJ. Instead, Dr. Nehrens completed a standard RFC form dated October 7, 2002, in which a number of limitations were listed. The assessment did indicate that plaintiff's prognosis was "poor," and that his degenerative facet disease, arthritis, and low back pain were expected to last for plaintiff's

lifetime.  The RFC assessment appears to describe conditions and limitations that are considerably more severe than those described in Dr. Nehrens' chart notes, which routinely recommend only conservative treatment through exercise and physical therapy, and describe plaintiff's MRI as normal. In a letter dated April 24, 2003, Dr. Nehrens opined that plaintiff "may have some limitation in sitting, standing, walking, lifting, carrying and handling objects," and opined that plaintiff's "mental activities . . . appear to be within normal limits."  In addition, a chart note of June 28, 2004, indicates that, in response to his request for a diagnosis of disability, Dr. Nehrens told plaintiff that his "normal MRI in March 2003 does not really support a diagnosis that would imply disability."

The difference between the severity of limitations set out in the RFC and in Dr. Nehrens' more extensive chart notes appears to be explained in plaintiff's testimony at the hearing before the ALJ.  When questioned about the RFC assessment prepared by Dr. Nehrens, plaintiff stated that Dr. Nehrens had asked him the questions on the RFC form, and had recorded his own answers.

In any event, the ALJ's conclusion that plaintiff was not disabled within the meaning of the Act is supported by substantial evidence in the medical record, including the

notes of plaintiff's treating physician, and her letter of
April 24, 2003.

### Conclusion

A Judgment should be entered dismissing this action with
prejudice.

### Scheduling Order

The above Findings and Recommendation are referred to a
United States District Judge for review.  Objections, if any,
are September 27, 2006.  If no objections are filed, review of
the Findings and Recommendation will go under advisement on
that date.

A party may respond to another party's objections
within 10 days after service of a copy of the objection.
If objections are filed, review of the Findings and
Recommendation will go under advisement upon receipt of
the response, or the latest date for filing a response.

DATED this 11th day of September, 2006.


_/s/  JOhn Jelderks_____
John Jelderks
U.S. Magistrate Judge